FILES, P. J.
After a court trial defendant was convicted of the offense of possession of heroin for sale, in violation of Health and Safety Code section 11500.5. He is appealing from the judgment.
Narcotics officers had been conducting an investigation of defendant for at least 30 days prior to his arrest on September 30,1963. At about 10:55 a.m. on that date Sergeant Pesler of the narcotics division of the Los Angeles Police Department and Officer Dorrell went to an apartment house at 801 North Las Palmas. They interviewed the occupants of apartment 3, seeking information about defendant. They returned to police headquarters about 3 p.m. As a result of some telephoning they learned for the first time how defendant spelled his last name. Then they returned to the Las Palmas address, accompanied by Lieutenant Green. They interviewed the manager and maintained a watch outside the apartment where they believed defendant to be. While this surveillance was being conducted, at about 6 p.m. Sergeant Bachman (at police headquarters) inquired of the sheriff’s office concerning defendant, and learned that a warrant was outstanding for defendant’s arrest upon a charge of violating Penal Code sections 647, subdivision (f) (drunk in public), and 415 (disturbing the peace). Bachman communicated this information to Sergeant Pesler by telephoning the office of the apartment house manager. At about 6 :30 p.m. defendant came out of an apartment. Sergeant Pesler approached him, asked his name, and then arrested him under the authority of the warrant. Defendant was carrying a brown paper sack which he dropped. It contained balloons and pieces of cellophane. Sergeant Pesler then patted defendant for weapons. He saw and felt a large bulge in defendant’s “right front pocket.’’ It felt like heroin, so the officer removed it. The bulge consisted of a plastic bag, inside of which were 25 balloons each containing a powder. Subsequent laboratory examination established that the total quantity of powder was 125 grams and that it contained heroin.
The warrant upon which the arresting officer relied was received in evidence. It is addressed to any peace officer of the State of California and contains an order that defendant is to be admitted to bail in the sum of $525.
*223 It is defendant’s contention here that the arrest under the misdemeanor warrant was a mere pretext for a search, and that an arrest upon a misdemeanor warrant does not authorize the arresting officer to search the pockets of the arrestee.
Upon this record the court does not reach the question of whether the initial arrest alone justified the emptying of defendant’s pockets. What occurred immediately after the arrest changed the situation completely. There can be no question about the duty of the officer to pat the defendant for weapons upon arrest. Sergeant Pesler testified that the package in defendant’s right front pocket felt like heroin. There is nothing in the record to cast doubt upon the factual basis of that opinion or the honesty of the witness. The sergeant had had six years’ experience in narcotics investigation and had made in excess of 700 narcotics arrests. A plastic package containing 125 grams of loose powder in a man’s pocket would be detected readily even by a nonexpert. The witness was not asked whether the pocket was in a shirt, coat, or trousers. Had defendant’s counsel wished to challenge the bona fides of the officer’s expressed opinion, he might have cross-examined on this point, but he did not. Apparently counsel was satisfied that further examination would not help his cause. After seeing defendant drop a bag of balloons— articles so commonly used by heroin peddlers—and then feeling the 125-gram heroin package as he patted the defendant for weapons, Sergeant Pesler was entirely reasonable in believing that defendant was committing a narcotics offense in his presence. Prom that point on, defendant was, in effect, under arrest as a narcotics offender, and subject to a complete search of his person as an incident of that arrest.
Defendant now argues that the use of the misdemeanor warrant was a mere pretext to conduct an exploratory search of his person. Defendant’s argument emphasizes (a) the arresting officers were from the narcotics division, presumably upon a narcotics investigation; (b) they undertook their investigation of defendant before they knew about the misdemeanor warrant; and (c) they did not make the arrest promptly upon learning of the warrant.
The record shows little of what the narcotics officers had learned prior to defendant’s emergence from the apartment, and nothing at all as to their objectives or as to what they would have done that evening had they not learned of the outstanding warrant. Doubtless these officers spent their day carrying out police functions other than the execution of *224 the misdemeanor warrant. Such adherence to their regularly-assigned duties can hardly be characterized as an offense against defendant, or as a circumstance militating against a lawful arrest of defendant when he eventually appeared. Only a half hour or an hour (depending on whose time estimate is adopted) elapsed between the first information the Los Angeles police had about the warrant and its execution. The fact that the narcotics officers went about their assigned duties during that period, instead of searching the building to find defendant, does not support defendant’s contention that the arrest was a1 ‘ pretext. ’ ’
Defendant relies upon the language of the Supreme Court in People v. Haven, 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927] : “Moreover, even if the officers had probable cause to arrest before discovering the marijuana, they were not entitled to delay making a formal arrest until they had taken defendant from the house to the hotel to justify a search of the hotel room as incidental to an arrest there. ‘An arrest may not be used as a pretext to search for evidence. ’ ’ ’
Nothing of that kind is involved in this case. The officers did not take defendant to another place so as to search it. They did not even wait for him to lead them to another place. They arrested him immediately on sight.
There is no basis for defendant’s contention that the observation of the balloons in the paper bag was an illegal search. Defendant dropped the bag as he was being handcuffed. The officers could not avoid retrieving it for him. There is no evidence that the bag was closed. To see what is in plain sight is not a search.
The judgment is affirmed.
Jefferson, J., and Kingsley, J., concurred.
Appellant’s petition for a hearing by the Supreme Court was denied December 13, 1967.