[Civ. No. 9948. Fourth Dist., Div. One. Dec. 11, 1969.]

MARVIN JOHN WILLETT, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Kegley, Peachee & Harvey and Russell L. Peachee for Petitioner.

James Don Keller, District Attorney, Richard H. Bein and Terry J. Knoepp, Deputy District Attorneys, for Respondent and for Real Party in Interest.

**OPINION**

**BROWN (Gerald), P. J.**—Marvin John Willett petitions for writ of prohibition or mandamus after the superior court denied his Penal Code section 1538.5 motion to suppress marijuana and dangerous drug evidence found by the police in a warrantless search of his car. Willett is charged with possessing marijuana (Health & Saf. Code § 11530), possessing marijuana for sale (Health & Saf. Code § 11530.5), possessing restricted dangerous drugs (Health & Saf. Code § 11910), and for failing to notify authorities of a change in his address while he was a registered narcotics offender (Health & Saf. Code § 11853).

On March 17, 1969, about 5:30 p.m., San Diego Police Officer Perry B. Morse stopped Willett and his two passengers in Willett's car to issue him an equipment warning because the car's right tail light was out. Although it was still light out, Willett was driving with his car lights on.

After checking Willett's driver's license and registration, Officer Morse radioed the police department for a records check on Willett and his two passengers. Meanwhile another officer, unnamed, interrogated the two passengers after asking them to get out of the car. Officer Newman arrived in response to Morse's call for police cover.

The records check revealed Willett was a registered narcotics offender and the address he had registered with the police differed from the address he had given Morse. Morse arrested Willett for failing to update his registered address as a narcotics offender (Health & Saf. Code § 11853). Officers Morse and Newman searched Willett's car, finding seven marijuana cigarettes and two benzedrine tablets in the console between the driver's and passenger's seats. Newman searched the front and rear seats and under them. He searched the glove compartment finding about 90

grams of marijuana in four plastic bags. About ten minutes later Morse told Newman Willett said he had three "reds" (Seconal capsules) in the pocket of his shirt which hung in the back of the car. Newman found the capsules.

██ Because he saw an equipment violation on the car, Officer Morse was justified in stopping Willett. (Veh. Code § 2806; *People* v. *Villafuerte,* 275 Cal.App.2d 531, 535-536 [80 Cal.Rptr. 279].) The questions involved here are: (1) were the police justified in detaining Willett for 40 minutes (Officer Morse's estimate) or more (Willett estimated "probably over an hour") to run a records check on him and his two passengers, and (2) were the police justified in searching Willett's car once they learned he may have committed a misdemeanor by failing to notify the authorities of a changed residence address?

Willett had a light bulb burn out in his car equipment. Officer Morse had no reason to believe Willett had committed any crime other than this equipment violation for which Morse intended to issue a warning. Why Morse called for police cover to issue this warning is unexplained. Officer Newman arrived about 5:45 p.m. or 5 to 15 minutes after Morse stopped Willett's car. He found Willett and one of his passengers in the rear of the police car. Another passenger sat on a hill with the unnamed police officer. The two officers already present wanted to use Newman's handcuffs to put on the passenger seated on the hill. We can only assume the handcuffs of Morse and the unnamed officer had been placed on Willett and the other passenger in the police car. No weapons search was made.

The officers did not receive the reply to their requested records check until about 6:10 p.m. Before then they still had no cause to suspect anything other than an equipment violation. Morse said the only things unusual about Willett's car were the lights were on in daylight and the right tail light was out. He did not see the passengers do anything before they got out of the car. There was nothing in the appearance of any of them which prompted him to run a records check. The only reason Morse gave for running records check was to "see if they had any record."

If there existed any reason justifying the officers' detention of Willett and his passengers in what appears to be rather heavy-handed police activity, the People chose not to disclose it either at the preliminary hearing or the special hearing on the motion to suppress.

*People* v. *Moore,* 69 Cal.2d 674, 682-683 [72 Cal.Rptr. 800, 446 P.2d 800] states: "Although circumstances short of probable cause to make an arrest may still justify an officer in stopping a pedestrian on the streets for

questioning, a police officer may not detain and question a person when there are no circumstances which would indicate to a reasonable man in a like position that such a course was necessary to the proper discharge of the officer's duties."

None of the additional circumstances are present here which we held justified a records check following an equipment failure stop in *People* v. *Brown,* 272 Cal.App.2d 448 [77 Cal.Rptr. 438]. There, it was night time in a rural area and the driver acted furtively before slowly coming to a stop. Moreover, only 5 to 10 minutes elapsed from the stopping in *Brown* to the arrest made after consent was given to search the car.

■ Here the initial stop and detention of Willett was valid and it was reasonable for the police to require identification. ■ However, just as a search which is reasonable at its inception may violate the Fourth Amendment by virture of its intolerable intensity and scope (*Terry* v. *Ohio,* 392 U.S. 1, 18 [20 L.Ed.2d 889, 903, 88 S.Ct. 1868, 1878]), so may an investigatory detention exceed constitutional bounds when extended beyond what is reasonably necessary under the circumstances which made its initiation permissible.

■ Where the reason for stopping Willett involved mere passive, nonculpable conduct on his part, we hold it to have been an impermissible intrusion on his security to have detained him for 40 minutes to make a records check, absent any suspicious circumstances other than his equipment failure alone. Neither good faith of the officers nor an inarticulated hunch will suffice to justify the intrusion (*Terry* v. *Ohio, supra,* 392 U.S. 1, 22 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868, 1880]). Here there was even less. The record shows only an unprovoked curiosity on the part of Morse to see if Willett and his passengers had records.

The officers were not justified in detaining Willett beyond what was reasonably necessary to issue him a routine equipment warning. ■ The search of Willett's car was based upon his arrest on information learned well after his detention had exceeded constitutional limitations. The evidence thus obtained should have been suppressed. (See *People* v. *Moore, supra,* 69 Cal.2d 674, 683; *People* v. *Henze,* 253 Cal.App.2d 986, 990 [61 Cal.Rptr. 545].)

Even had Willett been legally detained, the search of his car exceeded the scope to be permitted by an arrest for failure to notify authorities of his change of address. ■ To justify a search after an arrest, the search must be incident to, *i.e.,* bear a relation to, the arrest. (*People* v. *Blodgett,* 46 Cal.2d 114, 116 [293 P.2d 57].) An arrest does not justify an

exploratory search for evidence of other crimes (*People* v. *Roberts,* 47 Cal.2d 374, 378 [303 P.2d 721]; *People* v. *Mills,* 148 Cal.App.2d 392, 401 [306 P.2d 1005]).

■ The People attempt to justify the search of Willett's car on two grounds. They first argue the police were justified in searching for other evidence of Willett's residence to establish his failure to notify authorities of his change of address. Officer Morse said he checked Willett's driver's license and car registration as well as asking him where he lived. When Morse found Willett was a registered narcotics offender and living elsewhere than his registration, license and statement indicated, Willett admitted he had not changed the registration because "he had been working seven days a week and hadn't been able to register." With what the police already had and the meager prospects of finding more evidence we find a further search for evidence of Willett's residence unreasonable. Moreover, the police did not say they were searching for evidence of Willett's residence. It would appear they were not searching for evidence of his residence, as Officer Newman said he first searched the rear seat and front seat and underneath them. He then came across some miscellaneous papers in the glove compartment, which he picked up revealing a brown paper bag. Rather than examine the papers for identification, Newman opened the bag and found marijuana.

Second, the People seek to justify the search on the ground the officers' knowledge Willett was a narcotics offender who had failed to notify authorities of his change in address "would suggest to a reasonable officer . . . he might expect to find narcotics in [Willett's] possession." They cite *People* v. *Carrillo,* 64 Cal.2d 387, 392 [50 Cal.Rptr. 185, 412 P.2d 377], where the court said it was reasonable for officers to believe a person on parole for a narcotics conviction who failed to report for his Nalline test might possess narcotics. While failure to report for a test designed to detect narcotics usage may indicate one is using, thus in possession of, narcotics, we fail to see how a failure to report a change of address raises the same reasonable belief.

■ Officer Morse said there was nothing unusual about Willett, his car or his passengers. Willett's failure to change his registered address added no unusual circumstance which might lead to a reasonable belief his car contained contraband.

Let a peremptory writ of mandate issue commanding the Superior Court of San Diego County to suppress plaintiff's exhibits 1, 1a, 1b, 1c, 1d, 2 and

3, in the case of *People* v. *Marvin John Willett,* action number CR 17503.

Coughlin, J., and Whelan, J., concurred.